**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lana Hubbard, | CIV 13-8125-PCT-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Lana Hubbard's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits prior to September 1, 2011. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits in January 2010, and alleged disability beginning October 9, 2009. (Transcript of Administrative Record ("Tr.") at 17, 161-64.) Her application was denied initially and on reconsideration. (Tr. at 80-95.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 120-21.) A hearing was held on November 7, 2011, (Tr. at 35-65), and on November 25, 2011, the ALJ issued a decision finding that Plaintiff was not disabled prior to September 1, 2011, but became disabled through the date of his decision (Tr. at 12-34). The Appeals Council denied Plaintiff's request for review (Tr. at 1-5), making the ALJ's decision the final decision of the

Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 9, 2009 – the alleged onset date. (Tr. at 19-20.) At step two, he found that Plaintiff had the following severe impairments: lymphoepithelioma with a history of nasopharyngeal cancer, peripheral neuropathy, affective disorder, and anxiety disorder. (Tr. at 20.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 20-21.) After consideration of the entire record, the ALJ found that prior to September 1, 2011, "the date the claimant became disabled, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and SSR 83-10 specifically as follows: the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she was restricted from crawling, crouching, climbing, squatting, and kneeling; she could not use her lower extremities for pushing or pulling and further leg controls; and she was limited to performing unskilled work."[1] (Tr. at 21-26.) The ALJ additionally found that "beginning on September 1, 2011, the claimant does not have the residual functional

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  capacity to perform sustained work-related physical and mental activities in a work setting
2  on a regular and continuing basis as defined in SSR 96-9p at any exertional level as defined
3  in 20 CFR 404.1567." (Tr. at 26-27.)

4        The ALJ found that Plaintiff could not perform her past work, but, between her
5  alleged onset date and August 31, 2011, she could perform other work that existed in
6  significant numbers in the national economy. (Tr. at 27-28.) He determined that beginning
7  on September 1, 2011, there were no jobs in the national economy that Plaintiff could
8  perform. (Tr. at 29.) Thus, the ALJ concluded that Plaintiff was not disabled prior to
9  September 1, 2011, but that, as of that date, she became disabled. (Tr. at 29.)

## IV. DISCUSSION

11        In her brief, Plaintiff disputes the ALJ's findings prior to September 1, 2011, and
12  contends that the ALJ erred by: (1) failing to properly weigh medical source opinion
13  evidence; and (2) failing to establish an earlier date as her onset of disability.

14  **A.  Medical Source Opinion Evidence**

15        Plaintiff contends that the ALJ erred by failing to properly weigh medical source
16  opinion evidence. Specifically, Plaintiff argues that the ALJ should have given controlling
17  weight to the opinions of Michele Jordan, D.O., and Nimfa Aguila, M.D. Plaintiff also
18  alleges that the ALJ's decision to give little weight to the opinions of the state agency
19  physicians was error.

20        "The ALJ is responsible for resolving conflicts in the medical record." Carmickle v.
21  Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating
22  physician's medical opinion and other evidence in the claimant's record. In weighing
23  medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
24  types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
25  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
26  who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
27  1995). The Ninth Circuit has held that a treating physician's opinion is entitled to
28  "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

Since the opinions of Drs. Jordan, Aguila, and state agency physicians were contradicted by other medical source opinion evidence and medical evidence of record, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In his evaluation of the objective medical evidence with respect to Plaintiff's alleged physical impairments, the ALJ stated that "the undersigned has read and considered all the medical evidence in the record (Exhibits 1F - 27F). The minimal treatment records reveal

1    the claimant received routine, conservative, and non-emergency treatment since the alleged
2    onset date up to September 1, 2011." (Tr. at 22.)

3    The ALJ first discussed the opinion of consultative examiner, Michael Chipman, D.O.
4    (Tr. at 24, 729-32.) Dr. Chipman examined Plaintiff on June 22, 2010. He assessed Plaintiff
5    with "an essentially normal physical examination except for finding limited reflexes in her
6    biceps, triceps, bracioradialis, patellar, and Achilles tendons, tenderness to palpation in the
7    lumbar spine []." Dr. Chipman diagnosed Plaintiff with lymphadenopathy with a history of
8    nasopharyngeal cancer. Despite this diagnosis, Dr. Chipman found that Plaintiff had normal
9    strength, could ambulate with a normal gait and without an assistive device, was negative for
10   straight leg raising, was able to get on and off the examination table, could hear and speak
11   in normal conversational tones, and had a generally normal range of motion. Dr. Chipman
12   opined that Plaintiff had no functional limitations. The ALJ found Dr. Chipman's opinion
13   reasonable, yet adopted a more restrictive functional capacity giving Plaintiff the benefit of
14   the doubt.

15   Next, the ALJ discussed Dr. Jordan's assessment stating, "[t]he undersigned has read
16   and gives little weight to the disability statement on check-box forms by Dr. Jordan, dated
17   August 9, 2011 (Exhibits 21F and 22F)." (Tr. at 25, 867-73.) The ALJ found Dr. Jordan's
18   opinion brief, conclusory, and inadequately supported by clinical findings. He continued
19   stating that Dr. Jordan's opinion "appears to place more weight on the claimant's subjective
20   complaints that have been found only partially credible," and that, furthermore, the objective
21   evidence of record does not support the extreme limitations.

22   Then, the ALJ discussed Dr. Aguila's October 3, 2011 opinion. (Tr. at 26, 874-77.)
23   The ALJ gave Dr. Aguila's opinion great weight for the period from September 1, 2011
24   forward, while giving it little weight prior to that date. Dr. Aguila's opinion was dated
25   October 2011, and she first saw Plaintiff as a patient in August 2011. In essence, the ALJ
26   merely declined to apply the opinion retroactively, a decision that is supported by the opinion
27   itself, which does not indicate that Dr. Aguila intended it to be retroactive to the time before
28   she treated Plaintiff. The ALJ reasonably gave the opinion great weight for the period after

1 the treatment relationship began, but did not give the opinion weight for the earlier period, 2 when it would have been inconsistent with the contemporaneous medical evidence.

3 In his evaluation of the objective medical evidence with respect to Plaintiff's alleged 4 mental impairments, the ALJ stated, "[t]he treatment records prior to September 1, 2011 5 show the claimant received conservative treatment of prescription medication, counseling, 6 case management, and medication review for the diagnosis of various forms of mood 7 disorders and anxiety (Exhibits 8F - 10F, 24F). There is no evidence to suggest the claimant 8 was ever hospitalized for psychiatric treatment or received any psychotherapy. The treatment 9 notes indicate that when the claimant was scheduled for treatment she missed appointments 10 and was noncompliant with prescribed medications ... . The mental status evaluations 11 throughout [the] treatment notes do not support the claimant's allegations and mostly show 12 normal findings in most areas (Exhibits 8F - 10F, 24F, and 25F, p.11)." (Tr. at 23-24.)

13 The ALJ first noted that Plaintiff was assessed with global assessment functioning 14 scores ranging between 55 and 63. (Tr. at 24, 478-539, 567-728, 878-1062.) The ALJ found 15 that, in this case, Plaintiff's GAF scores indicate that she "at no point suffered from more 16 than moderate limitations," and the scores are supported by the objective evidence of record 17 and are given significant weight.

18 Next, the ALJ addressed the findings of psychological consultative examiner, Minette 19 N. Doss, Ed.D., giving significant weight to her opinion. (Tr. at 25, 733-43.) She diagnosed 20 Plaintiff with mild-to-moderate major depressive disorder and assessed a GAF score of 59, 21 representing moderate symptoms, and determined that Plaintiff did not meet the diagnostic 22 criteria for post-traumatic stress disorder. In intellectual testing, Plaintiff scored in the 23 borderline range, but showed potential for low average intelligence and had strengths in 24 memory and concentration. Plaintiff reported not taking an antidepressant but having been 25 helped by one in the past. Dr. Doss also completed a medical source statement and indicated, 26 *inter alia*, that Plaintiff had the ability to learn simple and moderately complex tasks, might 27 have problems with persistence because of chronic pain, had adequate social and

28

1 communication skills, and would be aware of normal hazards and have the ability to take
2 appropriate action.

3       Then, the ALJ discussed the opinions of the state agency reviewing physicians who
4 opined that Plaintiff's mental impairments would cause difficulty in the "B criteria: moderate
5 restriction in activities of daily living; social functioning; and with regard to concentration,
6 persistence or pace." (Tr. at 25, 82-95, 791-808.) The ALJ gave little weight to these
7 opinions finding them somewhat "contradictory" with Plaintiff's admitted activities of daily
8 living and the objective medical evidence of record.

9       The Court finds that the ALJ properly weighed the medical source opinion evidence
10 related to Plaintiff's alleged physical and mental impairments, and gave specific and
11 legitimate reasons, based on substantial evidence in the record to support his findings. The
12 ALJ properly discredited the opinions of Drs. Jordan, Aguila, and the state agency reviewing
13 physicians due to multiple inconsistencies with Plaintiff's treatment record and the medical
14 evidence as a whole. The ALJ also reasoned that said opinions were brief, conclusory,
15 lacked supporting clinical findings, and were primarily based on Plaintiff's self-reports. See,
16 e.g., Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair, 885
17 F.2d at 605) (An ALJ may reject a treating physician's opinion if it is based "to a large
18 extent" on a claimant's self-reports that have been properly discounted as incredible.);
19 Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between treating
20 doctor's questionnaire responses and her medical records provided a specific and legitimate
21 reason for rejecting the doctor's opinion of claimant's limitations); Connett v. Barnhart, 340
22 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's]
23 extensive conclusions regarding [the claimant's] limitations are not supported by his own
24 treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the
25 claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
26 Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was
27 unsupported by rationale or treatment notes, and offered no objective medical findings to
28 support the existence of [the claimant's] alleged conditions"); Batson v. Comm'r of Soc.

1  Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions
2  that are conclusory, brief, and unsupported by the record as a whole, or by objective medical
3  findings); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ
4  may permissibly reject check-off reports that do not contain any explanation of the bases of
5  their conclusions.").

6  Therefore, the Court finds no error.

7  **B.    Plaintiff's Disability Onset Date**

8  Plaintiff next argues that the ALJ erred in failing to establish an earlier date as her
9  onset of disability.

10  SSR 83-20 discusses how a disability onset date should be determined (assuming the
11  Commissioner has already decided the claimant is disabled). If the disability has a
12  "traumatic origin," the onset date will ordinarily be the date of the injury. SSR 83-20, 1983
13  WL 31249. If the disability has a "nontraumatic" origin, the date should be determined based
14  on factors such as the claimant's allegations, work history, and medical records. See id. The
15  Rule cautions that "[w]ith slowly progressive impairments, it is sometimes impossible to
16  obtain medical evidence establishing the precise date an impairment became disabling." Id.
17  In such a case, it may be necessary to infer the onset date from other sources of evidence.
18  The Rule goes on to state that "[i]n determining the date of onset of disability, the date
19  alleged by the individual should be used if it is consistent with all the evidence available."
20  Id.

21  Here, the ALJ reviewed the record and reasonably concluded that, as of September
22  1, 2011, Plaintiff's impairments had reached a point that they rendered her unable to perform
23  work-related physical and mental activities in a work setting. (Tr. at 26.) This date was
24  significant because it was the start of the first full month after Plaintiff began seeking
25  treatment from Dr. Aguila. See 20 C.F.R. § 316(a) (claimant is entitled to benefits beginning
26  in the first full month she is disabled). Furthermore, EMG testing in August 2011 showed
27  evidence of nerve damage in Plaintiff's arms and legs, and Dr. Aguila issued an opinion in
28  October (given great weight as of September 1, 2011), which indicated that Plaintiff was

1 disabled. (Tr. at 864-65, 874-77.) Plaintiff also complained of a sudden onset of back pain
2 to Dr. Jordan in September 2011, which had not resolved at the time of the hearing and was
3 one of Plaintiff's primary complaints at that time. (Tr. at 44-45, 115-18.) Also, in September
4 2011, Plaintiff re-enrolled with Mohave Mental Health and reported continuing depression
5 and anxiety and feeling overwhelmed and panicky. (Tr. at 878-97.) Panic, in particular, was
6 a new symptom and represented a worsening of Plaintiff's mental condition versus the
7 previous times she had sought treatment (compare Tr. at 885 with Tr. at 350, 483, 908.) In
8 light of this evidence of worsening conditions, the ALJ reasonably selected September 1,
9 2011, as the date that Plaintiff became disabled.[2]

10 Furthermore, as set forth in this decision, the medical evidence of record does not
11 support Plaintiff's claims of disability prior to September 2011. Indeed, the ALJ appears to
12 have given the benefit of the doubt to Plaintiff's subjective complaints and relied heavily on
13 her initiation of treatment with Dr. Aguila in setting September 2011 as her onset date.
14 While there are many records of her physical and mental health treatment prior to September
15 2011, there are relatively few records that address Plaintiff's functioning after September 1,
16 2011. (Tr. at 874-97, 1063-65, 1114-27.) With the voluminous earlier medical records not
17 supporting Plaintiff's claim that she was disabled for the entire relevant period and the
18 initiation of more aggressive treatment with Dr. Aguila (plus a worsening of Plaintiff's
19 mental complaints), the ALJ's selection of September 1, 2011, as Plaintiff's disability onset
20 date was reasonable. As such, the Court finds that the ALJ's decision was supported by
21 substantial evidence and finds no error.

22 \\\

---

[2] The ALJ was not required to consult a medical expert because Plaintiff's onset date was not uncertain. See Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589-90 (9th Cir. 1998). Here there were clear, new developments in the record that pointed to a worsening of Plaintiff's condition around September 2011, including her initiation of treatment with Dr. Aguila after years of stable polyneuropathy, the results of the EMG and nerve conduction studies, her complaints of sudden back pain, and her complaint of beginning to experience panic as a symptom of her depression and anxiety disorders.

# V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits prior to September 1, 2011.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 18th day of March, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge